UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
WILLIAM DIGIANNI,

              Plaintiff,

    -against-

PEARSON, INC., RICHARD MILLS,
Commissioner for New York State Department
of Education, NEW YORK STATE
DEPARTMENT OF EDUCATION,
AMERICAN INTERNATIONAL GROUP,

              Defendant.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

09 CV 1760 (RJD) (LB)

DEARIE, Chief Judge.

Pro se plaintiff returns yet again to this Court bearing claims for retaliation under the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA") against defendants Pearson, Inc. ("Pearson"), New York State Department of Education (the "Department"), New York Education Commissioner Richard Mills and American International Group ("AIG"). The claims against Pearson, Mills and the Department arise from defendant Pearson's administration of an examination as part of New York State's teacher certification process. Plaintiff alleges that Pearson's failure to provide him with certain test-taking accommodations was an act of retaliation for plaintiff's previously filing lawsuits alleging discrimination and retaliation by Pearson for failing to provide plaintiff with the same accommodations.[1] The allegations

---

[1] This circular claim is the latest chapter in plaintiff's pattern of litigation aimed at a discrete group of defendants. See, e.g., DiGianni v. Nat'l Evaluation Sys. Inc., 05 CV 4983 (ERK) (dismissed by Order dated July 16, 2007); DiGianni v. Spitzer, 05 CV 5408 (ERK) (dismissed by Order dated July 31, 2006); DiGianni v. Bloomberg, 06 CV 392 (ERK) (dismissed by Order dated December 12, 2007); DiGianni v. N.Y. State Dep't of Educ., 08 CV 762 (RJD) (dismissed by Order dated October 8, 2009; mandamus petition denied as moot on December 16, 2009); DiGianni v. N.Y. State Dep't of Educ., 08 CV 923 (RJD) (consolidated with prior action); DiGianni v. AIG, 08 CV 4355 (RJD) (dismissed by Order dated March 31, 2010; plaintiff warned that sanctions may be forthcoming); DiGianni v. Orrick, Herrington & Sutcliffe, LLP, 09

involving AIG are unrelated, but the conclusion is the same: that AIG refused to allow plaintiff to apply for a job due to plaintiff's previous lawsuits, including one against AIG, alleging discrimination and retaliation.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and argue that plaintiff's claims are barred by his previously dismissed lawsuits. For the reasons below, the Court dismisses plaintiff's complaint with prejudice. Further, the Court bars plaintiff from filing any future lawsuit in this District against any of these defendants without prior permission of the Court.

## **Background**

The requirement that a complaint plead a "plausible" claim for relief applies to pro se filings. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Nonetheless, a district court "remain[s] obligated to construe a pro se complaint liberally," id. at 72, and should grant leave to amend if "there is any indication that a valid claim may be stated," Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Where nothing in the complaint "suggests that the plaintiff has a claim," dismissal with prejudice is warranted. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

---

CV 3653 (RJD) (dismissed as frivolous by Order dated September 30, 2009; plaintiff warned that he may be barred from future filings without first seeking leave); DiGianni v. N.Y. State Dep't of Educ., 09 CV 4941 (RJD) (dismissed by Order dated February 4, 2010, for plaintiff's failure to pay the filing fee); DiGianni v. Pearson, Inc., 09 CV 5275 (RJD) (dismissed by Order dated February 8, 2011); DiGianni v. Pearson, 10 CV 206 (RJD) (dismissed by Order dated May 14, 2010, for plaintiff's failure to pay the filing fee); DiGianni v. AIG, 10 CV 1359 (RJD) (dismissed by order dated May 13, 2010, for plaintiff's failure to pay the filing fee); DiGianni v. N.Y. City Dep't of Educ., 10 CV 1538 (RJD) (dismissed by Order dated May 27, 2010, for plaintiff's failure to pay the filing fee); DiGianni v. New York City, 10 CV 2008 (RJD) (dismissed by Order dated June 1, 2010, for plaintiff's failure to pay the filing fee); DiGianni v. Bally's Total Fitness, 10 CV 2745 (RJD) (dismissed by Order dated November 12, 2010, for plaintiff's failure to pay the filing fee); DiGianni v. Pearson, Inc., 10 CV 4470 (RJD) (dismissed by Order dated December 8, 2010; plaintiff again warned that he may be barred from future filings without first seeking leave).

## Pearson, Mills and the Department

Plaintiff has filed at least fourteen unsuccessful lawsuits relating to his attempts to become a New York City school teacher. As part of the teacher certification process, New York State requires prospective applicants to take a number of tests, including a Liberal Arts and Sciences Test ("LAST"), which Pearson administers on the Department's behalf. In August 2005, when taking these examinations for the first time, plaintiff requested accommodations pursuant to the Americans with Disabilities Act ("ADA"). The pertinent details appear in Judge Lois Bloom's Report and Recommendation ("R&R"), dated May 23, 2007, in DiGianni v. National Evaluation Systems, 05 CV 4983 (ERK). Adopting the R&R, the District Court (the Honorable Edward R. Korman) granted summary judgment to the defendant, a predecessor to Pearson. Even assuming plaintiff was disabled within the meaning of the ADA due to alleged "verbal expressive" and "immediate short-term memory" disorders, the Court held that these alleged disorders did "not mandate that plaintiff be afforded a computer with grammar and spell check" for the examinations, as "the law does not require [the Department] to lower its standards" for licensing teachers. (R&R at 14.)

The details of many (but not all) of plaintiff's subsequent lawsuits against Pearson, New York City and public officials appear in this Court's Memorandum and Order, dated October 8, 2009, in DiGianni v. N.Y.S. Department of Education, 08 CV 762 (RJD). In that case, plaintiff alleged that defendants Pearson, Mills and the Department denied plaintiff's renewed request for alternative testing accommodations in November 2007 out of retaliation for plaintiff's previously requesting the same accommodations two years earlier. This Court held that plaintiff failed to state a claim for retaliation under the ADA, and denied plaintiff's request to amend the complaint to add a claim for retaliation under the Civil Rights Act.

3

Predictably, a new year brings a new test-taking episode. Plaintiff now alleges that, in November 2008, defendants once more denied his request for "alternative testing accommodations," which caused him to fail the LAST yet again. (Compl. at 3.) Plaintiff attributes the denial to defendants' knowledge "that [plaintiff] had filed Title VII complaints . . . for employment discrimination in the past." (Id.)

After filing this action, plaintiff filed another lawsuit alleging that a more recent failure on the LAST, in August 2009, was yet another act of retaliation by defendant Pearson. See DiGianni v. Pearson, 09 CV 5275 (RJD). On February 9, 2011, adopting an R&R issued by Judge Bloom, the Court dismissed that action because plaintiff had not served defendant with process within the time period allowed by Federal Rule of Civil Procedure 4(m). Plaintiff asserted that a mailroom attendant accepted the summons and complaint on defendant's behalf. Although such attempted service of process was insufficient, plaintiff claimed in a later lawsuit that defendant's failing to authorize a mailroom attendant to accept plaintiff's service of process was a separate act of retaliation. See DiGianni v. Pearson, 10 CV 4470 (RJD). On December 8, 2010, the Court dismissed that lawsuit as frivolous.

## AIG

In a suit commenced August 2008, plaintiff claimed retaliation after AIG did not interview plaintiff for any of three entry-level positions to which plaintiff applied electronically. See DiGianni v. AIG, 08 CV 4355 (RJD). After discovery revealed no evidence of a causal connection between plaintiff's earlier lawsuits and AIG's decision, and showed that plaintiff was unqualified for the positions, this Court awarded AIG summary judgment.

Plaintiff now claims that AIG "refused to let [him] complete" or "access" an unspecified on-line employment application "because they didn't want to hire a troublemaker," and

4

specifically because AIG allegedly "knew that [plaintiff] had filed Title VII complaints for employment discrimination . . . in the past." (Compl. at 3.)

## Discussion

In opposing defendants' motions to dismiss, plaintiff refers to Title VII of the Civil Rights Act and states that he has "demonstrate[d] a Title V prima face case." (Aff. in Opp., Dkt. #29, at 6.) For purposes of this Memorandum and Order, therefore, the Court assumes that plaintiff is pursuing retaliation claims under both Title VII of the Civil Rights Act and Title V of the ADA,[2] the provisions of which are "substantially similar." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

In denying plaintiff leave to amend one of his many prior complaints to include a claim for retaliation under Title VII, this Court explained that

> [p]laintiff's Title VII claim has two defects in addition to its failure to state sufficient facts to show a causal connection. First, plaintiff never alleged that any Title VII protected characteristic, such as race or religion, was the reason for defendants' actions. Second, plaintiff's Title VII claim against defendants New York State Department of Education, Richard Mills, Pearson and National Evaluation Systems fails because there is no employment relationship between them and plaintiff. See Guliano v. New York State Department of Education, 460 F.3d 361, 379 (2d. Cir. 2006) (holding that the New York State Department of Education does not exercise the control over New York City school teachers necessary to support Title VII liability).

(Mem. & Order, 08 CV 762, Dkt. #75, at 3.)

This analysis stands. Plaintiff declares that defendants have admitted "that they were my employer at the time they retaliated against me" and that they "are frequent violators of the Laws against Retaliation." (Aff. in Opp. at 3-5.) A glance at their moving papers confirms that defendants make no such concessions. Further, as shown above, being able to establish

---

[2] The ADA's anti-retaliation provision appears at 42 U.S.C. § 12203(a).

5

"employee" status would cure only one of the countless defects in plaintiff's claim.[3] Accordingly, the Court dismisses with prejudice plaintiff's claim for retaliation under Title VII. See DiGianni v. Spitzer, 2009 WL 742133, at *1 (2d Cir. 2009) (affirming the District Court's prior refusal to allow plaintiff to amend his complaint to include a Title VII retaliation claim because "[n]either [plaintiff]'s proposed amended complaint nor his brief identifies any potentially meritorious claims").

In dismissing a prior claim of ADA retaliation against these defendants, moreover, this Court noted that plaintiff had offered "no factual support whatsoever for the assertion that retaliatory animus played any role in . . . the decision to deny plaintiff's request for test-taking accommodations." (Mem. & Order, 08 CV 762, Dkt. #63, at 8.) Although the requisite "causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action," Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988), plaintiff had not alleged "anything beyond the fact that he filed lawsuits against defendants almost two years prior to the alleged retaliation," (Mem. & Order at 2). The Court also found plaintiff unable "to demonstrate that he can amend his complaint in a manner that would survive dismissal." (Id.)

The Court finds the allegations of causation similarly deficient here. Having built an infinite loop of accommodation requests and lawsuits, plaintiff does not bother to specify which lawsuits, if any, prompted the alleged adverse action in this case. The Court will not allow discovery to proceed so that plaintiff may once again "present[] no evidence that his disability played any role in the City's determination not to hire him," especially given that he "failed to

---

[3] Additionally, defendant Mills cannot be held personally liable for claims asserted under Title VII. See Wrighten v. Glowski, 232 F.3d 119 (2d Cir. 2000).

6

meet the City's minimum competency requirements." DiGianni v. Bloomberg, 311 F. App'x 492, 493-94 (2d Cir. 2009).

As prior litigation has established, plaintiff unequivocally is not entitled to the accommodations he requests.[4] Because "collateral estoppel bars relitigation of whether [plaintiff] had a right to use a word processor and spell checker as a reasonable accommodation for his disability," DiGianni v. Spitzer, 2009 WL 742133, at *1, plaintiff has taken simply to cloaking his failed requests for accommodations with the label "retaliation." But a plaintiff must present more than "labels and conclusions," or a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Given the repeated dismissal of his lawsuits, moreover, plaintiff no longer can "'establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [anti-discrimination] law,'" as is required to allege retaliation. Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (quoting Sarno, 183 F.3d at 159).

### Claim against AIG

The Court need not dwell on plaintiff's improperly joined claim against AIG. The assertion that AIG would not allow plaintiff to complete an on-line employment application "because they didn't want to hire a troublemaker" (Compl. at 3) is precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" the Supreme Court's "plausibility" standard was designed to weed out. Iqbal, 129 S. Ct. at 1937. Plaintiff does not even address this Court's previously awarding summary judgment to AIG regarding a highly similar claim. Thus, the Court dismisses plaintiff's claim against AIG for retaliation.

---

[4] The Second Circuit has since made clear that an allegation "amount[ing] only to the contention that [the Department's] licensing qualifications should be relaxed in light of [the plaintiff's] disability" does not state "a reasonable accommodation claim." Harris, 572 F.3d at 74.

## **Filing injunction**

The anti-retaliation provisions within the Civil Rights Act and ADA are meant to deter misconduct by limiting the adverse consequences to those who engage in protected activity. They are not a weapon with which to harass public and private entities for making legitimate decisions in the ordinary course of their operations.

Plaintiff fails to grasp this distinction, as his history of meritless litigation makes clear. For example, plaintiff has written that defendant "Pearson, Inc., should be ordered by this court to stop wasting the court's time and talk SETTLEMENT with me. SETTLEMENT talks if [sic] LITIGATION 101." (Pl's Aff., 10 CV 4470, Dkt. #9, at 2.) In addition, during a deposition in a prior case, plaintiff threatened to harass AIG into a settlement: "AIG, are they willing to drag it out for years on end to be brought right back or they can just simply . . . negotiate a settlement where I don't have – where they won't even have to mess with me anymore." (See Order, 08 CV 4355, Dkt. #45, at 6.) Plaintiff then e-mailed AIG's counsel: "Should you choose to continue to ignore me or talk around me, then you leave me with NO Choice but to SUE you and your lawfirm [sic] AGAIN, And Again . . . . When you want to end this. Let me know, so you can get your clients to write the check out to my name before they see another case with their name on it . . . . Do I have your attention now!!!!!!!" (08 CV 4355, Dkt. #35, at 2.) Plaintiff added that "[a]nyone related to me in any way can go after your client." (Id.)

More recently, the Court has learned that plaintiff has repeatedly contacted lawyers at Orrick, Herrington & Sutcliffe, counsel for Pearson, via email and voicemail during the pendency of this action. Laced with profanity, these messages have become menacing and include explicit threats by plaintiff to stalk a female partner at Orrick for the rest of her life for appearing in the Second Circuit to defend her client against plaintiff's claims.

Undeterred by repeated warnings, plaintiff insists in commencing baseless lawsuits and engaging in harassing and possibly criminal behavior toward opposing counsel. With plaintiff already having had repeated occasion to explain his prior conduct, and with the explanations being unpersuasive, the Court finds that a hearing on this matter would serve no purpose. Thus, plaintiff is prohibited from filing any lawsuit against defendant AIG, Pearson, Mills or the Department without first obtaining the Court's permission. Plaintiff clearly has engaged in "[a] history of litigation entailing vexation, harassment and needless expense to [these defendants] and an unnecessary burden on the courts and their supporting personnel." In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984) (internal quotation marks omitted); see also Malley v. N.Y. City Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997) (authorizing filing injunctions against plaintiffs who "persist[] in pursuing the same meritless claims"). To file a future action in this District against any of these defendants, plaintiff must first submit a statement of reasons why permission to file should be granted (titled "Request for Permission"), along with a copy of plaintiff's proposed complaint and a copy of this Memorandum and Order, to the Eastern District of New York's pro se office.[5] Plaintiff's next frivolous lawsuit against any defendant will result in plaintiff's being prohibited from filing any action in this District without prior permission.

Finally, the Court advises plaintiff to read Federal Rule of Civil Procedure 11, attached as Appendix A, which authorizes this Court to award sanctions, including monetary penalties or counsel fees, against a party who attempts to "to re-litigate issues relating to" the same frivolous claims. Jemzura v. Mugglin, 133 F.3d 907, 1997 WL 829252, at *1 (2d Cir. 1997) (table decision). Having lost hope that this plaintiff will heed the Court's repeated admonitions absent

---

[5] Further, submitting a copy of this Memorandum and Order shall be a complete defense to any action against AIG, Pearson, Mills or the Department, filed in any District Court within the State of New York, in which plaintiff has not complied with these requirements.

the spectre of serious financial sanction, the Court takes this action reluctantly but with a firm resolve that the time for warnings of potential sanctions has come and gone. There will be no more warnings and henceforth plaintiff proceeds at his peril.

SO ORDERED.

Dated: Brooklyn, New York
March 2̲1̲, 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge